**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF GEORGIA**

**VALDOSTA DIVISION**

FILED

OCT 27 2022

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

**JAMES LEON O'BRYANT**

**Plaintiff Pro-Se**

    **-v-**                                    **JURY TRAIL DEMANDED**

**SINGHANI INVESTMENT GROUP LLC**         **CIVIL ACTION** 7:22CV-116

**ONE TRIP INCORPORATED,**

**MANIK NARAIN SINGHANI,**

**MIKE SINGHANI,**

**MIRANDA ODOM,**

**WEAVER GLENN,**

**Defendants Sued Jointly & Severally**

**COMPLAINT FOR DAMAGES**

**AND EQUITABLE RELIEF**

Comes Now, the Plaintiff James Leon O'Bryant, Pro-Se "O'Bryant" in the above styled action, and shows to this Most Honorable Court good cause for his Complaint as follows:

**PRELIMINARY STATEMENT**

Plaintiff James Leon O'Bryant, hereby Respectfully Request This Most Honorable Court to allow him while proceeding pro-se, to proceed in forma pauperis where plaintiff is indigent and have no source of income due to a recent car accident leaving plaintiff out of work, and his claims are not frivolous. In addition, O'Bryant prays this Most Noble Court appoint Civil Employment Attorney with Expertise in Adverse Employment Actions by Employer, Close Proximity, Causal Link, in Initial Retaliations and Post-Termination Retaliations cases against employees to represent O'Bryant where plaintiff is not fully

skilled or equipped for the art and practice of civil law, and where the Court can Sua Sponte determine that the Rudimentary Demands of Justice has fleshed it out Justifiably.

Also, plaintiff request liberal construction of his Complaint in both pleadings and forms. In continuing further request this Court to hold plaintiff' Complaint, Pleadings, Motions or Drafts etc. in whatever form or how unartfully drafted to less stringent standards than formal Complaints drafted by Professional Attorneys as normally entertained by this Noble Court.

Furthermore, plaintiff have no formal nor legal education beyond his own limited knowledge and skills through self-study, my due diligence in time consuming research and fishing expeditions legally, gathering mostly direct physical documentary evidence as well as audio recordings of all defendants and some witnesses pursuant to the State of Georgia "one party consent law."

Moreover, plaintiff has no legal training nor expert skills in the application nor practice of Civil Procedure or law. Neither understand any of the local rules of the Court or it polices for proper court room decorum.

As such, plaintiff cannot perform matters and methods of law as competently as that of trained professional Civil Lawyers and other Necessary Experts.

Last but not lest plaintiff do not comprehend nor understand totally all the intimate intricacies of the civil litigation process or it's applications in and to the relevant laws. Hence, rendering plaintiff legally unqualified, disabled, or incapable of marshalling the facts appropriately to the law, and possibly not fostering and developing the proper legal strategy employing the necessary skills and expertise to fully and competently represent and defend himself as a plaintiff pro-se, in his best interest and from a Statutory and Constitutional standpoint of view in an effort to stop corruptions and promote justice.

Especially, where there may possibly be complications with evidentiary issues, in particular electronically stored information or data, and certain records that are required to be maintain for certain periods of time pursuant to (a) FLSA guidelines and compliance laws, and Georgia DOL laws and DOL 800 requirements and compliance with sanctions and its penalties. Finally, the litigation process may become ambiguous, complicated, or to challenging for the plaintiff and his degree or level of effective advocacy within the meaning of laws and procedures.

## JURISDICTION

Plaintiff at all relevant times was a resident at 670 CUTTING LOOP ROAD, Homerville, Georgia 31634. As such is subject to the personal jurisdiction of this Court.

1   Defendant Singhani Investment Group LLC hereinafter ("SIG") or ("Singhani") is a domestic limited liability company whose registered agent is Manik Narain

Singhani, 850 Valdosta Highway, Homerville Georgia 31634. SIG is subject to personal jurisdiction of this Court.

2  Defendant One Trip Incorporated hereinafter ("OT") is a Georgia for Profit Corporation whose registered agent is Manik Narain Singhani, 850 Valdosta Highway, Homerville, Georgia 31634. OT is subject to the personal jurisdiction of this Court.

3  Manik Narain Singhani ("Mike") is a resident at 110 Linnie St., Homerville Ga. 31634-2113, and is subject to the personal jurisdiction of this Court.

4  Weaver Glenn ("Glenn") is a resident of 74 Glenn Road., Homerville Ga. 31634-6157 and is subject to the personal jurisdiction of this Court.

5  Miranda Odom ("Odom") is a resident of 3592 Pearson Highway, Homerville Ga. 31634-3734 and is subject to the personal jurisdiction of this Court.

## SUBJECT MATTER JURISDICTION

6  This Court has subject matter jurisdiction under 28 U.S.C.A. 1331 as this case involves Federal Questions under the Fair Labor Standards Act.

7  This Court has "supplemental jurisdiction" over Plaintiffs' related State Law Claims pursuant to 28 U.S.C. section 1367 (a).

8  Plaintiff's State Law Claims share all common operative facts with the Federal Law Claim(s) and the parties are identical. Moreover, resolving all Federal and State law Claims in a single action serves the interest of judicial economy, convenience, and fairness to the parties.

## VENUE

9  Venue is proper in this Court under 28 U.S.C. as all of the defendants are residents of this district, and a substantial part of the events giving rise to this action occurred in Homerville, Georgia 31634.

## STATEMENT OF THE FACTS

10  Singhani Investment Group Limited Liability Company & "One Trip" gas station and convenient store is run by Mike Singhani through his two entities in Homerville, Georgia, at the address of 850 Valdosta Highway, Homerville Georgia 31634 ("Singhani Business Office") and ("the One Trip Store").

11  Plaintiff was hired by Weaver Glenn and worked (7) seven days a week, as a general laborer in One Trip store from July 12, 2019, until Oct. 22, 2 P.M. 2019, and as a non-exempt employee at $8.00 dollars per hour. But was Terminated on Oct. 24, 2019, under false pretext of Insubordination, for engaging in protected activity by requesting, complaining, and demanding proper wages for all hours worked and overtime pay, and verbal threats of reporting Mike, Weaver and Odom to the EEOC, U.S. and Georgia State Department of Labor, the Internal Revenue Service, and Social Security Administration on Oct. 22, 2019, Plaintiff's last day of work ending with approximately 41.11 hours, Net Pay 93.35 minus deductions as stated on "Final Check," received Oct. 25, 2019. And as opposed to what is fraudulently reported on the false pay roll and earning statement documents displaying (1) 63.06 hours worked and (2) paid Nov. 1, 2019, $260.45 deposited in JAMES CHECKING ….2211.

12  Also, Plaintiff received on Oct. 25, 2019, regular check for that pay day, without pay for all hours worked including overtime hours which shows 57.40 hours, Net Pay $288.39 minus deductions. And as opposed to what is fraudulently reported on false pay roll and earning statement documents displaying (1) 62.27 hours worked and (2) $280.30 deposited in JAMES CHECKING ….2211.

13  During this period from July 12, 2019, until Oct. 24, 2019, Defendants failed and refused to pay plaintiff wages for all hours worked and overtime hours plaintiff had earned working for SIG and at OT Convenient Store and Truck Stop. O'Bryant was Terminated Oct. 24, 2019, on False Pretext of "Insubordination."

14  In fact, Plaintiff first (4) four payments were in cash, as opposed to what is fraudulently report on the false pay roll and earning statement documents. Plaintiff did not open direct deposit account at Heritage Bank in Homerville, Georgia 31634 until September 12, 2019. Prior that same day September 12, 2019, Supervisor Weaver Glenn took Plaintiff to Valdosta State Patrol Office to get an identification card in order to open the direct deposit account on that day September 12, 2019.

15  Defendants Mike, SIG, OT, Weaver and Odom were obligated under O.C.G.A. 34-7-2 to pay Plaintiff all the wages he had earned for the hours including overtime

hours he had worked for Defendants at The One Trip Store up until Oct. 22 2 P.M. 2019.

16   Plaintiff made numerous (at least 15) requests, complaints, and demands to Mike, (the Owner) Weaver, (Supervisor/Manager) and Odom, Office Manager/Pay Roll Coordinator and Bookkeeper, for proper wages and overtime pay for all hours worked, starting from first pay in cash July 26, 2019, and every other pay period weekly thereafter until last day O'Bryant was allowed to work Oct. 22, 2019. And no work Oct. 23, 2019, nor Oct. 24, 2019, but terminated on Oct. 24, 2019. And to add insult to injury O'Bryant made further requests, complaints, and demands after Termination again on Dec. 17, 2020, Dec. 22, 2020, Jan. 6, 2021, and Jan. 25, 2021, and were continually refused and denied and retaliated against and defamed O'Bryant.

17   Despite SIG and OT'S duties, obligations and responsibilities under the FLSA, Mike, Weaver and Odom as Owner(s) Employer(s) Supervisor(s) or Managers(s) willfully rejected all of Plaintiff request, complaints, and demands and refused, and continue to refuse to pay Plaintiffs' proper compensation under the Fair Labor Standard Act. And the results have been False Accusations and Retaliation on Oct. 22, 23, and 24, 2019, and afterwards NEWLY DISCOVERED EVIDENCE OF TERMINATION for Stealing, and False Accusations and Retaliation of Slander Per Se on Jan. 6, 2021, and False Accusations and Libel Per Se and False Light Depictions with Disparaging Words and Publications against O'Bryant as a Thief on Jan. 25, 2021, all as other forms of Retaliatory Actions, Responses and `Methods used, and Defamations with Disparaging Words employed to depict O'Bryant after Termination in a False Light.

18   Mike Singhani had a significant ownership interest in both SIG and OT, and as Owner was in control of the day-to-day operations of SIG, and OT'S Business Operations, Properties, and Assets, rendering him personally liable for the wage and hour violations here at issue, and the unlawful retaliations during and after employment, and/or Libel Per Se on Jan. 25, 2021, and as False Light Depictions Defamations.

19   Glenn as Supervisor directly assisted Mike, and Odom in the day-to-day control and operations of SIG Business and OT'S Store and Truck Stop Business at which time O'Bryant worked, during the period in which Defendants violated the FLSA and its Adverse Employment Actions, Provisions and Retaliatory Protections as to O'Bryant. Glenn is therefore personally liable for the wages that were not paid to O'Bryant as required by law and O.C.G.A. 34-7-2.

20   Odom as Office Manager directly assisted Mike and Glenn in the day-to-day control and operations of SIG Business and OT'S Store and Truck Stop Business at which

time O'Bryant work. During this time Defendants violated the FLSA with their Adverse Employment Actions, and Retaliatory Termination of O'Bryant. Also, as an integral part of her duties with SIG and OT as Office Management, Bookkeeper, Accountant, and Pay Roll Coordinator, Odom was most prominently involved and responsible for the underpayments of employee's hours and overtime hours, in this case O'Bryant. Odom is therefore personally liable for the wages that were not paid to O'Bryant required by law and O.C.G.A. 34-7-2.

21   In Retaliation for O'Bryant asserting his rights to be paid for all hours worked including overtime hours he had worked under the FLSA Requirements, Compliance Laws and Guidelines on Oct 22, 2019, Mike GINNED UP a False Claim against O'Bryant that "Nay Nay" (Renay Mincey) who was the girlfriend of O'Bryant that day of Oct. 22, 2019, had come to Mike Office in Homerville, ("in less than 1.5 hours after O'Bryant had been Requesting, Complaining, and Demanding proper wages, overtime pay and Threats to Report Mike, Glenn and Odom to Proper Authorities") and reported to Mike that O'Bryant had been stealing Merchandise and items from One Trip Store. Mike then made an Adverse Employment Decision to not allow O'Bryant to work 4 P.M. to 7 P.M. Oct. 22, 2019, Oct. 23, 2019, and Oct. 24, 2019 (witnessed by employee Bobby Gary) and Retaliatory Action to Terminate O'Bryant effective on Oct. 24, 2019, on False Pretext of "Insubordination" for engaging in protected activity under FLSA on Oct. 22, 2019.

22   Prior to Terminating O'Bryant, Defendants Blatantly violated the Federal and State applicable Laws concerning the Fraudulent Establishment "without O'Bryant knowledge or consent" O'Bryant Checking Account and/or Falsifying Pay Roll and Earning Statement Documents, which is different than O'Bryant's first (4) four payments paid in cash amounts of $250.00 each pay period, accompanied by faulty and distorted Pay Roll Slips and earning Statements shows, like the last two pay periods on the Earning Statements provided to Morgan & Morgan from SIG, OT Odom and GUSTO on Oct. 25, 2019, and for the express purpose of not adequately compensating O'Bryant, and defrauding Federal and State Government.

23   Furthermore, Defendants blatantly violated Federal and State Laws concerning payment of employees by paying O'Bryant in cash, also for the express illegal purpose of avoiding documenting O'Bryant proper hour and rates of pay, and for the additional illegal purpose of avoiding their duty to withhold employment taxes, including unemployment contributions from Federal Tax withholdings, Social Security withholding that SIG and OT would have to match with their own money, and other proper Federal and State Tax withholdings.

24   All Defendants actions or omissions were in the scope of their employment and demonstrates Tacit Agreement or Tacit Understanding between Defendants,

constituting engagement in knowing Wage Theft, Tax Fraud and/or Evasions employed to keep from having to pay their side of Social Security, and Workers' Compensation Premiums based on O'Bryant status as an employee.

25   Defendants took aforementioned actions in relation to O'Bryant for the specific reasons of continuing the Wage Theft Schemes and Patterns of Conduct against other similar situated employees, but in particular O'Bryant in violation of the Fair Labor Standards Act, "Civil Georgia Racketeering Influenced Corrupt Enterprise/Organizations Act." Moreover, to Defraud via mail and phone the United States Government and more specific the U.S. Treasury Department, Internal Revenue Service, Social Security Administration, and the Department of Revenue of the State of Georgia, including Georgia Child Support.

26   While Defendants employed O'Bryant, O'Bryant enquired in disapproval about violating the law by being paid in cash, and not withholding proper taxes, but Defendants only change after O'Bryant's first (4 or 5) checks and was for about a month and a half from check form to direct deposit, approximately middle September 2019, until approximately Oct 19, 2019, then from Direct Deposit to cash again O'Bryant's last two checks Oct. 25, 2019.

27   O'Bryant, the Plaintiff, did not want to be a party to Defendants Fraud, but was unilaterally forced to do so temporarily with treats of Termination and repossession of vehicle, which was O'Bryant only means and source of transportation 14 miles to and from work each day (7) days a week, until shortly after Termination on Oct. 24, 2019, when vehicle was repossessed and redistributed.

28   SIG and OT own and operate multiple businesses in South and/or Middle Georgia including but not limited to:

29   (A) One Trip Incorporated 850 Valdosta, Highway, Homerville. Georgia.

30   One Trip Express, 370 W Forest Avenue, Homerville, Georgia.

31   Cork & Barrel Spirit Merchants located at 112 N Church Street, Homerville, Georgia.

32   The Car Co. at 178 S Church Street, Homerville, Georgia.

33   Fresh N Clean Launderette 32 W Forest Avenue, Homerville Georgia.

34   One Trip Main Street, E Willacoochee, Georgia 31650.

35   Title Mike 850 Valdosta, Highway, Homerville, Georgia.

36  The Fair Labor Standards Act applies to SIG and OT because it meets the required number of employees, and revenue threshold, for the FLSA application to them. In addition, Defendants violated the FLSA's Record Keepings and Documentary Preservation and Compliance Laws, such as Termination Letter pointing out reason for Termination as Falsely Reported by Mike to O'Bryant on Dec. 17, 2020, and a Properly Executed Georgia DOL 800 Separation Notice not provided to O'Bryant at time of Termination Oct. 24 or 25, 2019, neither at any other time to date.

37  O'Bryant was paid via multiple methods, cash first and pay slip, second Check Form, Third Direct Deposit, finally both final checks in cash and pay slips showing in each withholding on Oct. 25, 2019. All pay slip except last two were lost in glove compartment of vehicle Mike illegally repossessed from O'Bryant after Termination and was re-distributed at some later time to Nay Nay "Renay Mincey," after O'Bryant was Terminated Oct. 24, 2019.

38  In O'Bryant's first (4 to 5) weeks of employment with Defendants during the period from July 26, 2019, until August 9, 2019, pay periods through August 16, 2019. O'Bryant worked (7) days a week, 9.5 hours daily, at 59.5 hours weekly, 19.5 being uncompensated overtime hours. O'Bryant worked Friday to Friday 7: A.M. to 2: P.M. Friday and split shift 4: P.M. until 7: P.M. each day "Only worked 6 hours Wednesdays and Thursdays from 7: A.M. until 2: P.M. totaling 6.5 hours daily, 13 hours total two days.

39  John Tiller, who was the only other employee that worked and shared the same job duties, responsibilities, an obligations as O'Bryant  was fired approximately 4 to 5 weeks after O'Bryant was hired, and as a result O'Bryant job and schedule increased from a (2) two men to a one man job, with increased hours from 59.5 hours to 65.5 hours weekly up until Termination "Pro Rate the last week to approximately 41.11 hours," and still without proper wages for all hours worked including overtime hours from first pay day July 26, 2019 until Last pay day Oct. 25, 2019, as opposed to what is fabricated in Mike Jan. 25, 2021 Response Letter, and as opposed to what is Fraudulently represented in the Pay Roll and Earning Statement Documents for O'Bryant, showing Nov. 1, 2019, payment deposited in O'Bryant's Checking.

40  O'Bryant was not paid for all regular hours worked during his period of time employment at SIG and OT, from first to last paycheck, between July 12, 2019, through Oct. 22, 2019. O'Bryant was not paid for all overtime hours properly at no time during the time employed from first to last paycheck, between July 12, 2019, through Oct. 25, 2019, as fraudulently claimed in letter dated Jan. 25, 2021, by Mike.

41  O'Bryant hourly rate was $8.00 per hour and therefore the unpaid compensation for the regular hours in the amount of $178.00 equals 22.20 hours. The unpaid hours of overtime at the time and half rate of $12.00 hourly $3,877.68 equals 323 .14 overtime hours.

42  On Dec. 17, 2020, Mike Singhani, confessed to O'Bryant for first time after Oct. 22, 2019, requests, complaints, and demands, Mike's (own enough reason and his biggest thing) for "Cutting Ties or Terminating O'Bryant on Oct. 24, 2019" which Mike stated in no uncertain terms "even though I never caught you, but for Nay Nay to come out and say all that is enough reason for me "said Mike" to just Cut Ties I mean that's my biggest thing "Mike said." This directly contradicts the false Pretext of "Insubordination," in the Termination Letter.

43  Mike stated to O'Bryant on Dec.17, 2020, "Tell me this, first of all why are you calling me" O'Bryant responded, because I need you like I said to pay me my overtime money when I was on the job Mike. Mike continued to deny pay a year later, and retaliate on Dec. 17, 2020, in response to O'Bryant by adamantly stating "listen, no, as far as I am concerned that day is over, we have already settled, if anything is the truth, the truth is what Nay Nay said, so we're not going to discussing that "implying Overtime Issue and Reason for Termination.

44  O'Bryant responded to Mike, you know I have not taken a dime from you, I have not taken anything from you, you just mad I want my overtime money Mike and you don't want to pay me," Mike stated keep on thinking that and hung-up phone in O'Bryant's face still without proper compensation, and when O'Bryant asked, "what is the truth that Nay Nay said Mike." Mike spoke directly out of his own mouth, in the same conversation, on that date and at that time, "stuff you took out the back room, the medicine, cigarettes, cigars, swisher sweets," exposing for first time to O'Bryant one of Mike's shifting undocumented reasons, but hidden real motive, stated his enough reason and his biggest thing for Terminating O'Bryant.

45  Moments before these particular requests, complaints and demands, to Mike on Dec. 17, 2020, by O'Bryant. Odom stated to O'Bryant, she did not know what O'Bryant Terminated was for, or who Terminated O'Bryant, she did not know what the particular Insubordination was, Odom was not there when the decision was made, and that O'Bryant would have to ask Mike because Odom did not know who fired O'Bryant.

46  Odom on Dec. 17, 2020, and Dec. 22,2020, further confirmed her own willful failure to obey the aforesaid Federal and State Laws, by knowing O'Bryant was due regular hours and overtime wages but denied payment to O'Bryant and when O'Bryant asked Odom why she would not fix the overtime pay roll problem after Mike and Glenn would not pay O'Bryant, being Odom was SIG an OT'S payroll

administrator, Odom then hung-up in O'Bryant's face apparently because of dissatisfaction to O'Bryant's requests and inquiries.

47  Glenn on Dec. 22, 2020, stated he did not really know why Mike Terminated O'Bryant, but in the same breath ratified one of Mike's False, Self-serving Hearsay Statements, and Defamatory Accusations, with Glenn's own self-serving contributions to False Accusations, by claiming that day Oct. 22, 2019, or a couple days later after O'Bryant was gone Nay Nay brought cases and cases of cigars and cigarettes and gave them to Mike at the Store. And Glenn stated Mike just probably Terminated O'Bryant for Insubordination to go soft on O'Bryant rather than saying O'Bryant "Stole," indicating Termination for Insubordination was a False Pretext, and/or Adverse Employment Actions on Oct. 22, 23, 24 for engaging in protected activity under FLSA on Oct. 22, 2019, and for allegedly stealing and getting caught stealing cigarettes.

48  On Jan. 6, 2021, after Miranda Odom displeasure with O'Bryant by hanging up on him Dec. 22, 2020. Odom after Retaliatory Response Dec. 22, 2020, again Retaliated against O'Bryant by knowingly giving False, Misleading, Inaccurate Information in bad faith, for a Job Reference on O'Bryant and without O'Bryant's knowledge, authorization, verbal or written consent, and by publishing Defamatory Accusations and Charges against O'Bryant to unqualified, and unprivileged third party in the Job Reference, who is not affiliated with, or apart of and have no legitimate interests in SIG and OT Businesses operations or their employees. Odom's oral publications O'Bryant was fired "Terminated" for Stealing and Getting Caught Stealing Cigarettes were and is Slander Per Se and Punitive in nature under Georgia Law and is Odom's own contribution to False Accusations.

49  On Dec. 17, 2020, after a yearlong attempt of trying to find out Mike's real reason for Terminating O'Bryant, and again more requests, complaints, and demands for proper wages for all hours worked including overtime hours. O'Bryant discovered, this New "SMOKING GUN" Evidence of Stealing, as Mike's enough reason and biggest thing for Cutting ties or Terminating O'Bryant. Over one year later after the running of the Statue of Limitations for Slander Per Se, Libel Per Se, and False Light Defamations, O'Bryant discovered this fact which had been concealed in and under inter and intra corporate communications of Tacit Agreements or Understandings.

50  On Dec. 17, 2020, O'Bryant discovered for first time through his own due diligence, time consuming, and stress-filled fishing expedition, using his limited knowledge, education, skills, techniques, and methods legally to research, investigate and ultimately discover that which was hidden and otherwise undiscoverable to O'Bryant in the regular course of business as required by law, and was hidden, shielded, and covered up in inter and intra corporate communications, used to

fraudulently conceal the facts and the truths until they became too loose-knit, callous and obvious on Dec. 17, 2020, Dec. 22, 2020, Jan. 6, 2021 and Jan. 25, 2021.

51   On Jan. 19, 2021, after O'Bryant's original attorneys at Morgan & Morgan sent a Letter of Representation on O'Bryant's behalf to Singhani Investment Group/One Trip 850 Valdosta, Highway, Homerville, Georgia 31634, requesting preservation of evidence in case of potential law suit, and requesting the Company to share its position in regards to failure to pay O'Bryant for overtime hours worked, and that Morgan & Morgan intended to thoroughly investigate other issue surrounding O'Bryant's employment before deciding on what course of action to pursue.

52   On January 24, 2021, O'Bryant submitted a TIMESLINE & PRELIMENARY STATEMENTS to Morgan & Morgan with Official Position Contentions, Arguments, and Legitimate consideration for Compromise. Accompanied with Direct Physical Evidence, List of Witnesses and the Relevance of their Testimonies, most of whom have provided statements they are willing to Testify. Also, Important Documents Sustaining O'Bryant's Claims of Fraud or Forgery during and after employment, Voice Recordings identifying Perpetrators, Current (11th Cir. Case Laws, and Rulings. Everything necessary to prove each essential element of every claim O'Bryant is trying and have been trying to make from the very beginning. This can or will be established legally before any rational minded Grand Jury, Prosecutor, Judge(s), Jury, Attorney(s) Arbitrator(s) or Mediator(s) Board or Panel.

53   On Jan. 25, 2021, Mike, SIG and OT through their attorney Berrien Sutton, did share its position with Morgan & Morgan and James O'Bryant by providing an entire False, Fabricated, Misleading, Defamatory and Retaliatory Letter. In which, 90% if not 100% is and will be proven False and Retaliatory from the Dec. 17, 2020, conversation alone between Mike and O'Bryant, and the necessary causal link between the adverse employment actions in relation to O'Bryant's Termination, all established and confirmed by Mike to be the first time Mike and O'Bryant had spoken after Oct. 22, 2019. Mike stated Dec.17, 2020, to O'Bryant "I don't think we need to have the discussion about Termination, I mean I don't understand why we need to have that discussion a year from now, because there is really no point."

54

There exist, and at all times mentioned have existed a unity of interest and ownership between defendant Mike Singhani on one hand, and the other Entities listed in paragraphs "28 through 35," such that the requisite degree of individuality and separateness among at least SIG and OT and each of the other have ceased, and Mike Singhani is the ALTER EGO of one and/or the others and vis versa each defendant.

**55**

As such, O'Bryant contends adherence to the fiction of the separate existence of entities, and in particular "SIG and OT" as entities distinct from Mike Singhani would permit an abuse of company privileges, sanction fraud, and promote injustice. Hence, "SIG and OT" should be Externally Audited by the Federal and/or State of Georgia's Authorities, and Their Corporate Veils Pierced, and Mike's Alter Ego Exposed.

## COUNT ONE
## Violations of the Federal Fair Labor Standards Act

**56**

O'Bryant realleges and incorporates all of the above Styled Civil Action and foregoing numbered paragraphs and statements as additional facts and arguments in support of each individual Count(s) herein COUNT ONE and hereafter in all other COUNTS, and this entire Complaint for Damages.

**57**

O'Bryant was at all relevant times; a Non-Exempt employee and SIG and OT have sufficient amounts of revenue such that the Fair Labor Standards Act applies to SIG and OT jointly and/or individually respective.

**58**

As described above, SIG and OT did not pay O'Bryant for a total of (22.20) regular hours, which multiplied by O'Bryant's wage rate of $8.00 dollars per hour equals $178 SIG and OT owed to O'Bryant for regular wages.

**59**

As described above, SIG and OT did not pay O'Bryant for a total of (323.14) overtime hours properly, which multiplied by O'Bryant's (time and a half) wage rate of $12.00 dollars per hour equals $3, 877.68 SIG and OT owed to O'Bryant for overtime wages.

**60**

All three of these Defendants willfully refused to comply with the FLSA, and therefore, all are liable to O'Bryant for an equal amount of $4,055.68 as actual damages, not including attorney fees, incurred in bringing this action, at a reasonable rate appropriate for lawyers practicing in this District, plus costs.

**61**

O'Bryant is entitled to a judgement against SIG and OT and Mike in the total amount of $8,111.36 for his actual damages plus liquidated damages, not including a judgement against SIG and OT and Mike for O'Bryant's attorney fees incurred in bringing this action, at reasonable rate appropriate for lawyers practicing in this District.

## COUNT TWO

### Violations of Payments of O'Bryant's Wages under Georgia State Law

#### 62

SIG, OT, Mike, Glenn and Odom all violated and breached O.C.G.A. 34-7-2 by failing and refusing to pay O'Bryant all the compensation he had earned while they employed O'Bryant before his Termination.

#### 63

Despite being Terminated O'Bryant has an absolute right to recover all the compensation he earned from these Defendants.

#### 64

Defendants' failure and refusal to pay O'Bryant all earned income prior to suit have cause O'Bryant unnecessary delay, trouble and expense and they have acted in bad faith.

#### 65

O'Bryant is entitled to a judgement against SIG, OT, Mike, Glenn and Odom in the total amount of $8, 111.3 for his unpaid compensation, and a judgement against SIG, OT, Mike, Glenn and Odom for his expense of litigation in bringing this action, including attorneys' fees under O.C.G.A. 13-16-11 calculated at reasonable rates appropriate for lawyers practicing in this District.

## COUNT THREE

### Retaliatory Termination Against O'Bryant

### In Violation of The Fair Labor Standards Act

#### 66

29 U.S.C. 215 (A) (3) states "it shall be unlawful for any person to discharge or in any other manner discriminate against any employee because, the employee has exercised or is exercising his rights under the Fair Labor Standards Act.

#### 67

As noted, unofficial complaints expressed directly to employer constitute an assertion of rights under the FLSA, protected from Retaliatory Response. EEOC v. White and Son Enterprises Inc., 881 F 2d 1006 (11th Cir. 1989).

### 68

O'Bryant avers his requested, complained, and demanded pay from SIG and OT'S Owner Mike Singhani, Supervisor Glenn and "Office Manager Odom" (who was responsible for pay roll), for all hours worked including overtime hours from first four pay periods in cash, July 26, 2019, and every other pay day up until Oct. 22, 23, 24 and 25, 2019. From July 26, 2019, to August 16, 2019, O'Bryant's first four payments were in cash, as opposed to what was fraudulently reported to Morgan & Morgan and O'Bryant, in Pay Roll and Earnings Statement provided by SIG and OT. There were paper checks thereafter, then direct deposits, and last Two Checks being in cash with a pay slip. The pay slip is completely different than what shows on O'Bryant's Pay Roll and Earning Statements.

### 69

Mike's essentially Terminated O'Bryant on Oct. 22, 2019, directly in the middle of conversation, with Mike, where O'Bryant was Requesting, Complaining and Demanding proper wages for all regular hours worked including overtime hours, and verbal threats to report Mike, Glenn and Odom to EEOC, U.S. and Georgia Department of Labor, the Internal Revenue Service and Social Security Administration which settled in actual Termination on Oct. 24, 2019, under False Pretext of "Insubordination." Mike during that conversation, at that moment, time and place immediately stop O'Bryant from clocking into work that day Oct. 22, 2019, between the hours of 4 P.M. to 7 P.M.

### 70

Mike's reason to O'Bryant for this Adverse Employment Decision on Oct 22, 2019, was a very convenient, self-serving hearsay statement, made to O'Bryant that "Nay Nay" (Reney Mincey) had come to the Office in Homerville that day and had reported to Mike that O'Bryant had been Stealing from Defendants, and that Mike was going to do an investigation." In addition, Mike's claims were very suspicious in the timeline of events that day Oct. 22, 2019. And allegations of reporting stealing were vigorously denied by Nay Nay on Jan. 3, 2021, in fact, Nay Nay said Mike and Glenn lied on her the only thing Nay Nay return to Mike was (9) One Trip work shirts. And Nay Nay said that day when she had gone to Mike's office, that Mike was retaliating against O'Bryant because Mike was making all kinds of negative statements about O'Bryant that upset Nay Nay, and that was why Nay Nay went home and got all O'Bryant's clothes and threw them out in a friend and neighbor's yard that day Oct. 22, 2019. Witnessed by James Smith. "the friend and neighbor."

### 71

O'Bryant stated to Mike during that conversation, at that moment, time and place on Oct. 22, 2019, "Mike you know that is a lie, you and I know you got cameras all over the store, as well as mobile viewing by cell phone and at home, you just looking for a reason not to pay me my regular hour wages and overtime pay. But I'm going to report Mike, Glenn and Odom to the aforementioned Authorities. From that point O'Bryant was never allowed to work again by Mike, and still without proper pay or compensation to O'Bryant that was known by Defendants to be due.

72

On Oct. 23, 2019, O'Bryant despite the events of Oct. 22, 2019, reported for regular scheduled work, only to be turned around by Supervisor Glenn, at directions of Mike, with no explanation as to why, no disciplinary warning or write up for Theft or Insubordination, nor Stealing, neither Investigation as originally stated by Mike. Witnessed by disabled employee Bobby Gary and Juanita Smith. Stealing accusations were False at its inception. In fact Mike stated on Dec. 17, 2020, "even though I never caught you, for Nay Nay to come out and say all that is enough reason for me to cut ties, I mean that's my biggest thing, and Mike said "I don't even know what went on at the store while you was working there, so I didn't make it a big deal at the time and I just kind of cut ties."

73

Again, on Oct 24, 2019, despite the events of Oct. 22, and 23, 2019, O'Bryant reported for regular scheduled work, only to be turned around again by Supervisor Glenn, at directions of Mike, with no explanation as to why, no disciplinary warning or write up for Stealing, Getting Caught Stealing nor Insubordination, nor Stealing Investigation Report as originally stated by Mike on Oct. 22, 2019. Witnessed by disabled employee who is now deceased Bobby Gary and Juanita Smith. Bobby stated before his death in a legally recorded statement on Dec. 22, 2020, Bobby remembered it was two days defendant Weaver turned O'Bryant from work. Then O'Bryant stated to Bobby Gary in same recording, "that next day Friday Oct. 25, 2019, I pick up my last check and the Termination Letter, that was it nobody talk to O'Bryant about Termination or anything. O'Bryant also stated to Bobby that he (O'Bryant and Mike) had just been through the thing about overtime a couple of days before.

74

On Oct 24, 2019, just two days later after engaging in protected activity under the FLSA requesting, complaining, and demanding pay from Mike for all hours worked, including overtime hours pay, Mike made Adverse Employment Decisions to not allowing O'Bryant to clock in 4 P.M. to 7 P.M. Oct. 22, 2019, 23, and 24 and actually Terminated O'Bryant on Oct. 24, 2019, for Insubordination, with no facts or evidence supporting Insubordination in the Termination Letter, or in a disciplinary write up or Georgia DOL 800 Separation Notice which was not

provided to O'Bryant at realization of Termination on Oct. 25, 2019, which all constitute Prima Facie Evidence and the inference of False Pretext and Retaliatory Termination in violation of the Fair Labor Standards Act during employment at SIG and OT and afterwards.

75

Mike's original poorly constructed, but short-lived Pretext of a Stealing investigation against O'Bryant while O'Bryant was engaging in protected activities of requests, complaints and demands for proper wages for all hours worked including overtime hours pay on Oct. 22, 2019, surface in the form of Unlawful and/or Retaliatory Termination on Oct. 24, 2019, to be realized by O'Bryant Oct. 25, pay day 2019 without explanation from any employer(s), whether Owner, Supervisor, Office Manager or any other Designee nor employee.

76

O'Bryant <u>Request Judicial Notice</u> or that this <u>Most Honorable Court Sua Sponte take Notice</u>: that the Original Stealing Accusations allegedly made to Mike by Nay Nay (Renay Mincey) on Oct. 22, 2019, and ratified by Mike again Dec. 17, 2020, was completely abandoned by Mike on Jan. 25, 2021, and replaced with a new source for first time Mrs. "first name unknown" O'Bryant.

77

After Termination Oct. 24, 2019, Odom further Retaliated against O'Bryant, by willingly publishing in bad faith False and Defamatory Charges against O'Bryant to third party in Job Reference on Jan. 6, 2021, "that O'Bryant was Terminated for Stealing and He Got Caught Stealing Cigarettes,"

78

Mike further Retaliated against O'Bryant on Jan. 25, 2021, by deceitful means and artful practices in a response to a letter to Morgan & Morgan and O'Bryant, expressly implying and insinuating O'Bryant instead of cleaning the vehicle as instructed, drove the Vehicle to Waycross ga. to see his girlfriend, when Mike in fact knew O'Bryant took vehicle to Waycross as he did at other times and cleaned it, and that O'Bryant girlfriend name was "Nay Nay" (Renay Mincey) and Mike knew that she lived in Argyle Ga. not Waycross.

Moreover, Mike recanted that "Nay Nay" (Renay Mincey) was responsible for the False Accusations of Stealing, but that it was in fact actually Mrs. O'Bryant who was contacted and came to the Office in Homerville and informed Mike that O'Bryant had been stealing from Mike. And Mrs. O'Bryant was still at office when her husband arrived and quite a scene resulted because of the girlfriend in Waycross.

79

O'Bryant was depicted in a False Light, which is highly offensive to O'Bryant. Depicting O'Bryant by Retaliatory means as a Traitor, a man who was irresponsible, immoral, unfaithful, untrustworthy and an Adulterer to his wife Mrs. O'Bryant, and on that day Oct. 22, 2019, Mrs. O'Bryant came to Mike office in Homerville and called her husband a Thief.

### 80

O'Bryant was not and is not married to anyone on Oct. 22, 2019, and still is not to date. Therefore, Mike False Accusations and Misleading Statements, Disparaging Words and False Light Depictions were not based on truth, facts, personal knowledge or an iota, bit, nor speck of credible evidence direct nor circumstantial. Neither were Mike's self-serving hearsay statements corroborated by any other person(s), or a contemporaneous statement signed by Mrs. O'Bryant produced. Hence, could serve no purpose but to continue to retaliate after Termination, defame, and cause more harm and damaged to O'Bryant's reputation and finances, serving as another Retaliatory Action against O'Bryant in an attempt to escape personal liability.

### 81

At best, Mike have changed bad matters from worse, to irreparable. Mike through calculated deceptions have mislead his own attorney Berrien Sutton in the drafting and forwarding of a response letter on Jan. 25, 2021, (to Morgan & Morgan concerning Mikes, SIG and OT's position on O'Bryant's overtime pay (complaint) and in order to manipulate and mislead any other reader(s) who were not knowledgeable of the actual facts, by changing words from their rightful place and order from the Dec. 17, 2020, recorded conversation between Mike and O'Bryant, through a process of distorting facts and fraudulently concealing truth, and witfully and in bad faith fabricated lies, and Forged Identity and Pay Roll Documents on O'Bryant, but has Retaliated and Published O'Bryant as "THE THIEF" in the face of Robbing O'Bryant and the Federal and the State of Georgia Government(s) and through Criminal & Civil RICO violations, all while and because O'Bryant engaged in protected activity under the Fair Labor Standards Act from before Oct. 22, 2019, and again on Oct. 22, 2019, Dec. 17, 2020, Dec. 22, 2020 and Jan. 19, 2021.

### 82

Now getting further into the irreparable part of the bad matters that Mike has made worse, Mike through Berrien Sutton in the response letter dated Jan. 25, 2021, fabricated this entire letter in direct relation to Termination Inquiry of O'Bryant and Overtime Pay request, complaint and demand by O'Bryant on Dec. 17, 2020, which letter is itself is 99% False, word by word, line by line, sentence by sentence, and not by a Preponderance of the Evidence, but by a Clear and Convincing Evidence Standard once true facts are established and revealed before a Judge or Jury in open court, or Arbitration, such as but certainly not limited thereto:

83

(a) "Months later, Mr. O'Bryant contacted my client asking for a separation notice." Direct Evidence will prove this statement 100% False.

(b) "He was informed that one would be supplied." Direct Evidence will prove this statement 100% False.

(c) "Your client asked that the events surrounding his leaving not be set forth." Direct Evidence will prove this statement 100% False.

(d) "He was informed that my client would have to state the truth about the conduct of your client." Direct Evidence will prove this statement 100% False.

(e) "Your client then indicated he did not want a separation notice." Direct Evidence will prove this statement 100% False.

(f) "O'Bryant asked about payment for overtime." Direct Evidence will prove 100% TRUE. Nevertheless, Mike actual response was Retaliatory and Punitive in nature and demonstrated close proximity and causal link to Unlawful and Retaliatory Termination explained in para ("84") hereafter.

(g) "There was a period of time during why Mr. O'Bryant was not paid overtime due to a change in Pay Roll Software." Direct Evidence will prove 100% False.

(h) "It was determined that Mr. O'Bryant might be due overtime pay less than $500.00 and payment was offered to him." Direct Evidence will prove 100% False.

(i) "Mr. O'Bryant refused to accept the tender of any overtime pay due him." Direct Evidence will prove 100% False.

(j) "My client is still willing to pay Mr. O'Bryant any overtime due him." Direct Evidence will prove 100% False.

84

Although it is TRUE "O'Bryant asked Mike about payment for overtime." Mike deliberately downplayed the actual words that were used when O'Bryant asked and the context of what that asking was about, because the words used by Mike

verbatim spoke directly to and showed close proximity and the causal link to the protected activity O'Bryant engaged in by requests, complaints and demands for all hours worked including overtime hours on Oct. 22, 2019, and Mike's adverse employment decisions to not allow O'Bryant to work 4 P.M. to 7 P.M. on false accusations of stealing on Oct. 22, nor work on the 23, and then Retaliatory Terminated O'Bryant on Oct. 24, 2019, on False Pretext of Insubordination, and the newly discovered evidence from Odom and Mike for Stealing and Getting Caught Stealing Cigarettes. (These are the actual words spoken between O'Bryant and Mike in that conversation concerning overtime pay on Dec. 17, 2020, which was first time Mike and O'Bryant spoke after Oct.22, 2019 and they went exactly like this verbatim):

### 85

… "first of all, tell me this, said Mike to O'Bryant. Why are you calling me," O'Bryant responded, "because I need you to pay me like I said my overtime pay when I was on the Job Mike." Mike strongly stated to O'Bryant directly, "listen, no, as far as I am concerned that day is over, we have already settled." And O'Bryant requests Judicial Notice or that this Noble will Court Sua Sponte take Notice to the fact that the only settlement between SIG, OT, Mike, Glenn and Odom after request, complaints, and demands for all hours worked including overtime on Oct. 22, 2019, was effective termination on Oct. 24, 2019. The direct evidence will prove by a Preponderance of the Evidence and will be Clear and Convincing to the Court or Jury that the only settlement by Mike with O'Bryant was Mike's Adverse Employment Decisions to not let O'Bryant work on Oct. 22, from 4 P.M. to 7 P.M. no work on 23, nor 24 and retaliatory Termination effective Oct. 24, 2019. Mike has never settled or attempted to settle with O'Bryant for all hours worked, including overtime hours, which was the original thing to be settled with O'Bryant on Oct. 22, but definitely on or before Termination Oct. 24, 2019.

### 86

As a direct, foreseeable, and proximate result of Defendants actions, inactions, tacit agreements or understandings within the scope and agency of employment, O'Bryant has suffered lose earned income, job, vehicle, reputation, and continue to suffer financial hardship, humiliation, anxiety, embarrassment, mental and emotional distress. O'Bryant has incurred and continue to incur expenses.

### 87

Defendants committed the acts herein alleged maliciously, fraudulently, and oppressively, with the wrongful intent to injure O'Bryant. Defendants acted and/or omitted to act in bad faith, with an improper and evil motive amounting to malice and a conscious and reckless disregard for O'Bryant's rights. The acts taken towards O'Bryant were carried out by defendants acting in deliberate, callous, intentional, and reckless manner with a desire to injure and damage.

88

Pursuant to section 216 (b) of the Fair Labor Standards Act, 29 U.S.C. section 216 (b), O'Bryant is entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs.

89

## COUNT FOUR

### Violations of the State of Georgia's Civil, Racketeer Influenced

### Corrupt Organization/Enterprise Act Against O'Bryant

At all relevant times, Defendants through a pattern of racketeering activity committed Fraud and/or Forgery in O'Bryant's Pay Roll and Earning Statement and acquired and maintained direct interest in personal property(s) owned by O'Bryant in the form of "unpaid wages for regular hours worked and overtime wages, and a vehicle that was repossessed and redistributed. In addition, before then by knowingly employing Bobby Gary, a disabled person and paying his salary in cash, under the table and without withholding or reporting proper taxes on Bobby Gary. Such activity is illegal and prohibited under O.C.G.A. section 16-14-1 et seq. (Georgia Rico) and in this case includes violations of O.C.G.A section 16-8-4 "Theft by Conversion or Wage Theft," and violated the Fair Labor Standards Act and its Retaliatory Protections against O'Bryant."

90

SIG, OT, Mike, and Odom devised or intended to devise a scheme or pattern of conduct to defraud the Federal and State Governments and O'Bryant by performing these fraudulent acts via use of mail fraud pursuant to 18 U.S.C. section 1341 and tax fraud and/or invasion pursuant to section 7201 of the Internal Revenue Code.

91

Defendants deliberately, intentionally and fraudulently forged and/or falsified information in legal documents on W2 Form and Pay Roll and Earning Statement, and via mail and/or wire, and provided them to Internal Revenue Service, Social Security Administration, the State of Georgia and O'Bryant that the entire earnings of O'Bryant were "5506.25" while fraudulently not reporting and concealing the facts and truth about O'Bryant's unpaid wages including overtime wages and taxes.

92

The (11th Cir.) Court of Appeals, has determined every pay day an employee is not paid proper wages and overtime in that pay period is a separate violation of the Fair Labor Standards Act. As such, O'Bryant argues that despite the illegal pattern of conduct with Bobby Gary for over a decade, Defendants committed more than, but

at least two or more predicate acts against O'Bryant under Georgia Law, by fraudulently forging O'Bryant name in Pay Roll and Earning Statement showing O'Bryant was paid first 4 payments in O'Bryant's Checking Account, and by refusing and continuing to refuse to compensate O'Bryant for all hours worked including overtime hours from O'Bryant's first paycheck in cash July 26, 2019, August 2, 9, and 16, 2019. And underpay every other pay day up till Termination on Oct. 24, 2019.

93

Defendants illegally repossessed personal property in the form of a vehicle that was being purchased by O'Bryant in "Nay Nay" (Renay Mincey) name, from Glenn through Mike's Car Co. listed in paragraph '32' above during O'Bryant's time of employment at SIG and OT. Defendants have refused and continue to refuse to return the vehicle in same good condition or repair or repay O'Bryant back money invested in purchase of vehicle prior to Unlawful and Retaliatory Termination contrary to the "Theft, Conversion, and RICO Laws of the State of Georgia, and the good order, peace, and dignity thereof.

94

The Defendants acts described above constitutes violations of the Georgia Civil Racketeering influenced corrupt Organization/Enterprise Act O.C.G.A. sec. 16-14-1 et seq. (Georgia Rico). The acts of racketeering activity committed by Defendants have the same or similar intents, in that they sought to deprive O'Bryant out of personal property, "earned income, a vehicle and other pay slips in glove compartment of car.

95

The acts of racketeering activity committed by the Defendants have the same or similar result, in that they did all result in Defendants exerting control and possession over O'Bryant's personal property a vehicle, including money converting the vehicle and money to their use while unjustly enriching themselves.

96

The acts of racketeering activity by the Defendants have the same or similar accomplices, in that they involve SIG, OT, Mike Singhani, Weaver Glenn and Miranda Odom for their individual benefits and benefit for Entity Defendants.

97

The acts of racketeering activity committed by the Defendants have the same or similar victim(s) specifically O'Bryant and others who were similarly situated John Tiller and Enell "Doe." Both are witnesses, and last name of Enell will be provided and have more evidentiary support after reasonable investigation, research, and

discovery to be supplied in O'Bryant's First Amendment of this Complaint for Equitable Relief and Damages.

### 98

The acts of racketeering committed by Defendants have the same or similar methods of commission in that they involve Wage Theft, Identity Theft Fraud or Forgery, including Mail Fraud and Tax Fraud or Invasion. The illegal repossession and redistribution of O'Bryant car that was being purchases and deducted from weekly pay at $75.00 generally according to last payment more, all committed in furtherance of patterns of misconduct or schemes to defraud O'Bryant out of his interest in earned income, and car and to defraud the Federal and State authorities out of proper Accounting, Bookkeeping, Reporting and Taxes, in violation of FLSA, GEORGIA RICO, Social Security Administration, Internal Revenue Service, and the Georgia Child Support.

### 99

The acts of racketeering committed by defendants are interrelated by distinguishing characteristics and are not isolated incidents, in that the acts involve the same or similar misrepresentations, the same or similar modes of commission, the same or similar financial benefits to Defendants, and the same or similar effort to conceal the misconduct.

### 100

As a direct and proximate result of Defendants Georgia Rico Violations, O'Bryant has suffered and continue to suffer injury and damages.

### 101

O'Bryant is entitled to treble or three times the actual damages sustained and to recover the attorney fees and costs of investigation and litigation reasonably incurred under O.C.G.A. sec. 16-14-5 (c).

### 102

O'Bryant is entitled to additional relief in the form of an Order divesting each Defendant of any interest in SIG, OT and other Organizations or Business Enterprises or any interest in any entity constituting a member thereof, including all real and personal property (including money) derived from the Organization and/or Enterprise under O.C.G.A. sec. 16-14-4 (a).

### 103

Because Defendants individual and concerted actions or inactions showed willful misconduct, malice, fraud, forgery, wantonness, bad faith, oppression, or that entire want of care, which would raise the presumption of conscious indifference to

consequences, in violation of the Georgia Rico Statue, O'Bryant also is entitled to an award of punitive damages.

104

## COUNT FIVE

### Federal and/or State of Georgia Civil

### Conspiracy & Aiding & Abetting

### All Defendants

Defendants on or about July 12, 2019, through Jan. 25, 2021, by unlawful means, combined, confederated, and agreed by tacit agreement or understanding, in concert with one another to damage and cause harm to O'Bryant, via their acts and/or omissions within the scope of the employment.

105

Acting together, intentional, and deliberate, callous and loose-knit, defendants engaged in tortious misconduct described in the above foregoing COUNTS all which are again realleged and incorporated herein this Civil Conspiracy, Aiding & Abetting COUNT as additional facts and arguments in support of this Claim. Defendants illegal and unartful business practices, schemes and patterns of misconduct have caused O'Bryant harm in his Finance, Reputation and severe mental anguish and emotional distress, and have left O'Bryant liable and vulnerable to Federal and State Governments for unreported earned income and appropriate taxes withholdings as well as under reporting to Georgia Child Support Authorities in Waycross, Georgia.

106

For example, all Defendants have knowingly and willfully violated and committed these crimes, torts, and personal injuries, and with a reckless disregard for the Federal Government Laws and the Laws of the State of Georgia by: Conspiring to Commit Identity Fraud, Theft or Forgery. Conspiring to Commit Wage Theft or Conversion, Conspiring to Commit Unlawful or Retaliatory Termination on False Pretext of Insubordination. Conspiring to Slander Per Se and Libel Per Se against O'Bryant for Theft, Stealing and Getting Caught Stealing Cigarettes. Conspiring to violate the Fair Labor Standards Act. Conspired to Commit mail Fraud. Conspired to Falsify, Forge and/or Fabricate Fraudulent Bank Account in O'Bryant's name. Conspired to manufacture Fraudulent and Forged Pay Roll and Earning Statement Documents on O'Bryant. Conspired against O'Bryant in his W2 form on total amount of earned income, and Georgia Child Support on O'Bryant's average hours and gross amount earned. Conspired to Commit Tax Fraud and/or Invasion,

Conspired to Commit more than two predicate acts of racketeering in violation of Georgia Rico Act or Law.

### 107

O'Bryant argues, Defendant as Employers, Co-conspirators, and Agents one to each other Misconducts were Unlawful Schemes and Patterns of Conduct amounting to violations of Federal and State Laws and Requirements, via lies, fraud, deception, theft, falsified documents, U.S. mail, E-mail Land line, Cell Phone or Fax.

### 108

Each defendant Aided & Abetted the unlawful acts or omissions of the Conspiracy, including other Torts, and breaches of duty owed to the Federal, State of Georgia, County of Ware, and O'Bryant.

### 109

As a direct result of the Defendants Conspiracy and Aiding & Abetting, O'Bryant has suffered and continue to suffer harm and damages in an amount to be proved at trial.

### 110

Defendants have acted in bad faith, and maliciously and have caused O'Bryant unnecessary delay, trouble, and expense. Accordingly, pursuant to O.C.G.A. sec. 13-16-11, O'Bryant is entitled to recovery of his litigation expenses, including but not limited to O'Bryant's reasonable attorney's fees and costs.

### 111

Defendants' misconducts, actions or omissions show willful misconduct, malice, fraud, forgery, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling O'Bryant to an award of punitive damages.

### 112

## COUNT SIX

### Defamation: Slander Per Se

### Office Manager/Pay Roll Coordinator Odom

Defendant Miranda Odom, Office Manager/Pay Roll Coordinator, made numerous oral statements about O'Bryant to another third party that were False Accusations, Defamatory, Retaliatory and Malicious Statements in nature on Jan. 6, 2021.

### 113

Odom's knowing and willful False Accusations, and Defamatory, and Retaliatory, and Malicious and Misleading Statements published O'Bryant was fired for "Stealing and that He Got Caught Stealing Cigarettes," charging or imputing these Stealing or Theft crimes to O'Bryant and that they were the reason for O'Bryant's Termination on Oct 24, 2019.

114

These statements are of the kind tending to injure the reputation of O'Bryant and expose O'Bryant to public hatred, contempt, embarrassment, and ridicule. In addition, the statements were made as to O'Bryant's in regard and in relation to O'Bryant's occupation and job performance, during the time of employment with SIG and OT, and was calculated to harm O'Bryant's reputation, credibility, and further chances at gainful employment in future.

115

Defendant Miranda Odom published the above-described information without O'Bryant's knowledge, verbal nor written consent, which included Defamatory and/or Retaliatory Statements about O'Bryant, to another unknown and unqualified third party who did not have a legitimate nor common interest in the subject matter, and was not affiliated with SIG, OT, Mike, Glenn, or Odom. Neither was this third party a bonified prospective employer who had authorization from O'Bryant for a Job Reference on or before Jan. 6, 2021.

116

Defendant Miranda Odom published these statements, with no basis in fact(s), nor was Stealing or Getting Caught Stealing Cigarettes, documented as the reason for Termination on Oct. 24, 2019. The Termination Letter O'Bryant received from Odom on Oct. 25, 2019, effective on Oct. 24, 2019, only shows Insubordination.

117

As a result, Defendant Miranda Odom's False statements, O'Bryant has and is suffering actual injury and special harm in the form of damages to O'Bryant's reputation, finances, emotional wellbeing, other injuries, and the ability to obtain other employment.

118

Defendant Miranda Odom has acted in bad faith and have caused O'Bryant unnecessary delay, troubles, and expense. Accordingly, pursuant to O.C.G.A. sec. 13-6-11, O'Bryant is entitled to recovery of his litigation expenses, including but not limited to his reasonable attorney's fees and costs.

119

Defendant Miranda Odom actions show willful misconduct, malice, fraud, wantonness, oppression, and retaliation, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling O'Bryant to an award of punitive damages.

120

## COUNT SEVEN

### Defamation: Libel Per Se

### Owner/CEO Mike Singhani

In a Response Letter to Morgan & Morgan, and James O'Bryant, On Jan. 25, 2021. Mike through his attorney Berrien L. Sutton, made numerous False Accusations, Defamatory, Retaliatory, Malicious and Misleading Statements, including Derogatory Comments and Disparaging Words intended to Depict O'Bryant in a False Light as a Theft and Unfaithful husband who was supposed to be completing an assigned task of cleaning Mike personal truck on the Job, but instead decided without permission to take the Owner/Employers personal truck to Waycross, Georgia, to see his Girlfriend.

121

Mike's False Accusations, Defamatory, Retaliatory, Malicious and Misleading Statements against O'Bryant, is Highly Offensive to O'Bryant, and could serve no purpose but to Discredit, Humiliate, Embarrass, Defame, Emotionally Disturb and Retaliate further against O'Bryant and mislead and deceive any other reader(s) causing more harm and damages after Termination on Oct. 24, 2019, again on Jan. 25, 2021.

122

Mike employed a methodology and used it to fabricate an entire Response Letter Jan. 25. 2021, concerning a Dec. 17, 2020, conversation between Mike and O'Bryant regarding Mike's reason for Terminating O'Bryant, and O'Bryant's Requests, Complaints, and Demands for overtime pay. In said Response Letter, Mike distorts the facts and conceal the truth, in order to mislead, manipulate and deceive his own attorney Mr. Berrien Sutton, and any other readers of the letter, and was not due to inadvertence, mistake or accident.

123

Mike's actions were knowingly, deliberately and intentionally done by Mike, in that it was done purposely by Mike to flesh out an undocumented Pretextual afterthought of the truck example as the reason for the Insubordination Termination. Mike's False Accusations, and Misleading Statements to Berrien Sutton by deceptive means and through unartful practices in furtherance of the

FLSA violations, Retaliatory Termination, Wage Theft, Tax Fraud or Evasion, Forged or Fabricated Documents of Pay Roll, Earning Statements, Bank Fraud and Identity Fraud/Theft, were all a part of a Pattern of Illegal Conduct to Defame and Retaliate against O'Bryant in an attempt to escape liability, after the Pretext of Insubordination on Oct. 24, 2019.

### 124

In fact, none of Mike false or pretextual, nor pretextual afterthought statements bare sufficient indicia of reliability to support their probable accuracy, and they are so at odds with ordinary common sense that no reasonable minded Judge, Jury, Attorney, Arbitrator(s), or Mediator will believe the lies and deceptions of Mike after O'Bryant establish, show and prove the unadulterated truth, with direct actual facts, and credible witnesses testimony in Civil Court, which contradict and discredit the entire distortion of fact and concealment of truth in the letter of Mike.

### 124

Defendant Mike Singhani published those statements with a specific intent to cause harm and damages to O'Bryant, benefit himself, and shield Mike, his entities , co-conspirators and upper management from their personal, vicarious and respondeat superior liability.

### 125

As a result, Defendant Mike Singhani's False Accusations, Defamatory and Retaliatory Actions, Malicious and Misleading Statements, Derogatory Comments, Disparaging Words and False Light Depictions against O'Bryant, has caused O'Bryant to suffer and continue to suffer actual injury and special harm in the form of damages to his reputation, lost income past and present, emotional distress and other injuries.

### 126

Defendant Mike Singhani has acted in bad faith and have caused O'Bryant unnecessary delay, trouble, and expense. Accordingly, pursuant to O.C.G.A. sec. 13-16-11, O'Bryant is entitled to recovery of his litigation expenses, including but not limited to reasonable attorney's fees and costs.

### 127

Defendant Mike Singhani actions show willful misconduct, malice, fraud, retaliation, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling O'Bryant to an award of punitive damages.

### 128

## COUNT EIGHT

## Intentional Infliction of Emotional Distress

### All Defendants

Defendants engaged in the extreme and outrageous misconduct herein and directly in relation to claims above in each <u>COUNT</u> in proceeding paragraphs, and is hereby realleged and incorporated, as additional facts and arguments in support of all claims and is hereby alleged in this <u>COUNT EIGHT and with reckless disregard of the probability of causing O'Bryant severe emotional distress.</u>

### 129

As a proximate result of knowing and willful, and extreme and outrageous misconduct engaged in by the defendants collectively, O'Bryant has suffered and continue to suffer humiliation, embarrassment, mental anguish, and extreme emotional distress all to O'Bryant's general damages in an amount to be proved at trial.

### 130

Defendant's misconduct begins before July 26, 2019. But, July 26, 2019, started the refusal date of not paying O'Bryant for all hours worked, including overtime hours in a single work week or pay period, and continued August 2, 2019, and again August 9, 2019, and again August 16, 2019, throughout every other pay day on Fridays up until Termination on Oct. 24. Pay day was Oct. 25, 2019.

### 131

The Defendants in making bad matters worse, were so extreme in their misconduct, when O'Bryant over one year later requested, complained, and demanded proper wages and overtime pay on Dec. 17, 2019, from Odon and then Mike. Odom Retaliated and Slandered Per Se O'Bryant on Jan. 6, 2012, and Mike committed Libel Per Se against O'Bryant on Jan. 25, 2021. Defendant's misconduct was so outrageous that it shocks the conscience and is highly offensive to O'Bryant causing extremely severe emotional distress.

### 132

Defendants misconduct as herein alleged was malicious, oppressive, retaliatory, and defamatory in nature, in that it was carried on by Defendants in a willful, reckless, and conscious disregard for O'Bryant's rights and have subjected him to cruel and unjust hardship(s). O'Bryant is therefore entitled to an award of punitive damages.

### 133

### COUNT NINE

### Negligence

### Supervisor/Glenn

Defendant Weaver Glenn, in his individual and professional capacity committed negligent actions or failure to act, by failing to comply or assure compliance by Mike and Odom to mandates and requirements of the Fair Labor Standards Act. Glenn failure to act nor take any measure to protect the rights of O'Bryant is the proximate cause of financial hardship, emotional distress and other injuries and damages visited upon O'Bryant.

### 134

Defendant Glenn had a duty of care that he owed to O'Bryant not to cause O'Bryant emotional distress.

### 135

Defendant Glenn breached this duty of care by way of his own misconduct as alleged herein above.

### 136

As a proximate result of the extreme and outrageous misconduct of Mike and Odom collectively, O'Bryant has suffered and continue to suffer emotional distress, financial loss, humiliation and embarrassment because of defendant Weaver Glenn negligence or failure to act or to assure compliance with the FLSA and O'Bryant.

### 137

Defendant Glenn negligence has cause and continue to cause O'Bryant substantial monetary loss past and present, the cost of this suit, humiliation, embarrassment, mental anguish, and emotional distress, all to O'Bryant's harm and damages in an amount according to proof.

### 138

### PLAINTIFF JAMES O'BRYANT'S PRAYER FOR DAMAGES

### AND EQUITABLE RELIEF

WHEREFORE, in concluding O'Bryant respectfully prays that this Honorable Court enter judgement against each Defendant jointly and/or severally as follows:

### 139

Issue a money judgement on all Counts against Defendants individually and/or collectively representing compensatory damages, including lost wages, would have been past and present earnings, and all other sums of money together with interest on these amounts according to proof, but not less than $250.000 U.S. Dollars, plus TREBLE damages for Civil and Criminal RICO Violations and Conspiracies ( all

exclusive of interest and cost of this lawsuit including reasonable attorney fees and costs in proper pursuit of litigation to judgements on these claims).

### 140

Issue a money judgement against Defendants for unpaid wages at the regular hourly rate of $8.00, including unpaid overtime wages at rate of $12.00, and other compensation denied or lost to date by unlawful acts of Defendants according to proof.

### 141

Issue a money judgement in the form of liquidated damages in an amount equal to wages unlawfully unpaid.

### 142

Issue a money judgement in the form of unpaid overtime, with an equal amount of liquidated damages for overtime wages unlawfully unpaid.

### 143

Issue a money judgement against all defendants in the form of "TREBLE DAMAGES" of any compensatory judgement in this case awarded and for the violations of Georgia's Racketeering Influenced Corrupt Organization/ Enterprise Act.

### 144

Issue a money judgement for all claims in each <u>COUNT</u> according to proof.

### 145

Issue a money judgement for mental pain and anguish, and severe emotional distress according to proof.

### 146

Issue an Order for Punitive Damages on Counts One, Three, Four, Five, Six, Seven, Eight of $1,000.000 U.S. Dollars individually or collectively.

### 147

Issue an Order for Reasonable Attorney's Fees and Costs.

### 148

Issue an Order for Back Pay, Front Pay, Pre-judgement and Post-judgement interest, including increase to account for inflation according to any and all monetary judgements awarded as a result of any claim in this lawsuit.

### 149

Issue an Order for any and all other such relief this Noble Court deems just, proper, and equitable. under these particular facts and circumstances in O'Bryant's causes of action.

### 150

Issue an Injunction, Enjoining Mike, Glenn, and Odom to cease and desist from Slandering Per Se and Libeling Per Se and Retaliating against O'Bryant for his engagements in protected activities, and to stop giving unprivileged False and Negative Job References in Bad Faith on O'Bryant, and that SIG and OT pay O'Bryant for all hour worked and overtime hours worked according to FLSA Compliance Laws, and Laws of the State of Georgia.

### 151

Issue and Order allowing Plaintiff James Leon O'Bryant to proceed in forma pauperis, whereas Plaintiff is indigent and out of work due to a recent auto accident on or about August 30th, 2022

### 152

Issue an Order enjoining United States Marshal Service to serve process, Summons and Civil Complaint Actions upon all named defendants; To Wit: (1) Manik Narain Singhani and/or Mike Singhani as Registered Agent at 850 Valdosta Hwy, Homerville, Ga. 31634, (2) Weaver Glenn, "Residence at 74 Glenn Road" Homerville, Ga. 31634-6157 or work address 850 Valdosta Hwy, Homerville Ga. 31634, (3) Miranda Odom, "Residence at 3592 Pearson Hwy" Homerville Ga. 31634-3734 or work address 850 Valdosta Hwy, Homerville, Ga. 31634

### 153

Allow plaintiff to Amend the Original Complaint or Amended Complaint after the time allowed to file the Amendment without leave of the Court via motion, and after initial disclosure, if necessity dictates within the Supervision and Discretion of the Court in the interest of justice and fairness to all parties.

And be allowed to supplement the record with other probative evidence, relevant documents, exhibits, audio recording and/or true and correct certified transcribed copies of audio recordings, emails, and other tangible things, that are or may become needful and relevant in support of the proof necessary to sustain his claims or any claims alluded to or mentioned that may become a later issue(s) upon Amendment(s) or related issues relating back to original claims or may become discoverable later because of exclusive knowledge and possession or concealment by

defendants, which may prove detrimental or prejudicial to justice and equity and law in plaintiff case.

At a minimum, allow Complaint to be filed, and Issue an Order Staying the entire Civil Proceedings, and holding in abeyance any Court Ruling on plaintiff prayer to proceed in forma pauperis and appointment of Civil Employment Attorney, pending plaintiff ability to somehow find competent, affordable and experienced legal representation or some form of financial assistance or legal aid.

Or at least until adjudication of plaintiff/claimant Demand For Arbitration against Morgan & Morgan Atlanta, in accordance with and pursuant to our Arbitration Agreement: for (1) Professional Attorney Malpractice, (2)Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealings, or (3)Promissory Estoppel, Actual Fraud, Fraudulent Concealment of Material Fact, all in direct relation and particular to each individual underlying claims and causes of action in this Civil Complaint. As such, disposition or resolution through Arbitration may render any other proceeding herein this Court MOOT. Due to his attorneys' errors constituting Malpractice, Deliberate Misconduct, Negligent and Callous errors plaintiff is forced to try and mitigate his damages and preserve the remainder of his claims that are still within statues of limitations periods and may still be addressed on the merits.

Or at least until Adjudication of plaintiff pro-se Civil Complaint being prepared now to be filed in Marietta Superior Court against Attorney Charles "Chuck" M. Dalziel, Jr. at Dalziel Law Firm Marietta Ga. 30060. For (1) Professional Attorney Malpractice, (2) Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealings, or (3) Promissory Estoppel, (4) Actual Fraud, (5) Negligent Representation, Intentional and Negligent Infliction of Emotional Distress. And failure to raise his claims timely in the underlaying causes of action in this Civil Complaint in which prior attorneys at Morgan & Morgan fail to raise, in which O'Bryant has reasonably and justifiably relied on both Law Firms to his detriment and as a proximate cause has suffered economic and financial loss and reputational damages.

So moved on this 22nd day of Oct, in the Year of Our Lord, 2022.

"Oh, who was its used to say, George M. Cohan, if you speak longer than five minutes and have not struck oil, you had better stop boring." Anyhow, God Bless America and Save this Most Honorable Court.

Signature: *James Leon O'Bryant*

**Mr. James Leon O'Bryant**

**Pro-Se**

**470-579-8244**

**5484 Timor Trail**

**Stonecrest/Lithonia Ga. 30038**

obryantjames@gmail.com

## VERIFICATION

Comes Now the Plaintiff, James Leon O'Bryant, Pro-Se and hereby verify that the information provided in the Civil Complaint is true and correct to the best of my knowledge, information, belief, and understanding. Also, plaintiff have provided and placed in U.S. Mail Pursuant to Mailbox Rule Sufficient Postage Pre-Paid via Certified Mail on this 22nd day of Oct. 2022 (1) Original and (1) Copy of Civil Complaint for the Court and (3) copies for Notice and Service of Process on each Defendant addressed to:

**Clerk of Civil Court**

**Federal Middle District**

**Valdosta Division**

**U.S. District Court**

**401 North Patterson Street**

**Valdosta, Georgia 31601**

**P.S. would you please be so kind as to send plaintiff a Stamped Filed Copy of First Page of Civil Complaint as a courtesy of the Clerk's Office.**

**Signature:** *James Leon O'Bryant*

**Mr. James Leon O'Bryant**

**Pro-Se**

**470-579-8244**

**5484 Timor Trail**


**So moved on this 22nd day of Oct, in the Year of Our Lord, 2022.**